UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

COREY DARNELL MCKAY                          CIVIL ACTION

VERSUS                                       NO. 06-5770

TERREBONNE PARISH SHERIFF'S                  SECTION "J" (2)
OFFICE THROUGH SHERIFF JERRY
LARPENTER

## REPORT AND RECOMMENDATION

Plaintiff, Corey Darnell McKay, is an inmate currently incarcerated in the Allen Correctional Center in Kinder, Louisiana. He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against the "Terrebonne Parish Sheriff's Office Through Sheriff Jerry Larpenter." McKay alleges that, while he was incarcerated as a pretrial detainee in the Terrebonne Parish Criminal Justice Complex in December 2005, he was improperly housed with convicted inmates and, as a result, another inmate attacked him. His written submissions suggest that he also alleges that he did not receive proper medical care for injuries received in the attack. McKay seeks monetary damages and injunctive relief. Record Doc. No. 1 (Complaint at ¶¶ IV, V).

On October 26, 2006, I conducted a telephone conference in this matter. Participating were plaintiff pro se and Bill Dodd, counsel for Sheriff Larpenter. Plaintiff

was sworn and testified for all purposes permitted by <u>Spears v. McCotter</u>, 766 F.2d 179 (5th Cir. 1985), and its progeny.

McKay filed a motion seeking an order requiring that he be given an eye examination.  Record Doc. No. 9.  Construed broadly, this motion may be viewed to seek either injunctive relief or an examination pursuant to Fed. R. Civ. P. 35.  Although defendant was given an opportunity to file an opposition, Record Doc. No. 15, none has been received.  This report contains a recommendation for disposition of plaintiff's motion pursuant to 28 U.S.C. § 636(b)(1)(B).

## THE RECORD

McKay testified that he is currently incarcerated in the Allen Correctional Center in Kinder, Louisiana, to which he was recently transferred from the Forcht-Wade Correctional Center ("Wade") in Keithville, Louisiana.  He said he had been in Wade from May 30, 2006 until October 2006.

Plaintiff confirmed that the incident giving rise to his claims in this case occurred in December 2005 while he was incarcerated in the Terrebonne Parish jail, <u>before</u> his transfer to Wade.  He stated that he was incarcerated in the Terrebonne Parish jail beginning September 14, 2005, when he was arrested on charges of possession of cocaine and marijuana and a curfew violation, and he remained in the Terrebonne Parish jail after

2

his conviction on January 17, 2006, until he was transferred in March 2006.  He said he is currently serving a sentence of two years in prison.

McKay testified that the incident about which he complains in this case occurred while he was in the Terrebonne Parish jail as a pretrial detainee on or about December 18, 2005.  He stated that, before that date, he had been housed in a dorm for pretrial detainees in the Terrebonne Parish jail.  He testified that, because he became involved in a fight with another inmate in the pretrial detainee dorm on December 18, 2005, "they moved me out of that dorm and . . . to a DOC (state Department of Corrections) dorm, with all DOC inmates."

Asked whether his move to the dorm housing DOC inmates was punishment for having been involved in the fight or whether it was for security or other reasons, McKay said he did not know, but "I guess it was punishment."  He said that the dorm to which he was moved was a place where convicted inmates were being held.  He asserted that, because he was a pretrial detainee, he should not have been moved to a dorm where convicted inmates were being held and that he could have been sent to another available dorm, such as the lockdown dorm.

McKay testified that he had a record of three felony convictions before his arrest on the charges for which he was in the Terrebonne Parish jail at the time of the subject incident.  He stated that his record of prior felony convictions includes a 1999 cocaine

3

possession conviction for which he was sentenced to six years in prison but for which he was paroled after three years.  He confirmed that he was on parole at the time of the 2005 arrest that led to the subject incarceration in the Terrebonne Parish jail.  He testified that he also had previously been convicted in 1993 of carnal knowledge of a juvenile, for which he served two years in prison, and in 1996 for possession of cocaine, for which he served three years in prison.

In addition to his complaint about being housed with convicted inmates, plaintiff testified that he asserts a second claim in this case that, after he was transferred to the dorm housing convicted inmates in the Terrebonne Parish jail, he was assaulted by another inmate.  McKay stated that he had been in the dorm with convicted inmates for about three weeks when another inmate put some soap in a sock and hit McKay in the eye while McKay was playing cards.  He identified the inmate who struck him as Troy Jackson.  Asked if he knew anything about Jackson, McKay said, "The only thing I can tell you about him . . . . is he used to like my little cousin (a young woman), he used to call by the house."

McKay said he did not know why Jackson would attack him in jail.  He testified, "We never had no conflicts. We never had nothin' . . . .  He just came out of the spur of the moment."  McKay said Jackson was not playing cards with him at the time of the attack and had been quiet earlier in the day.  He said he knew of no reason why any of

4

the guards or other inmates might have suspected that Jackson would attack him.
Plaintiff testified that he and Jackson had not had any previous arguments or other
disagreements of any kind, either in jail or before their incarceration, but that Jackson had
been in a couple of fights with other inmates before McKay arrived in that dorm.  He
speculated that Jackson may have attacked him because Jackson was angry with McKay's
young woman cousin.

Plaintiff testified that Jackson struck him twice from the blind side in the right eye.
He said he suffered two cracked bones around his right eyeball as a result of the attack.

Asked if he asserts a claim in this case that the medical attention he received for
his eye injuries was improper, McKay responded, "I ain't really making that."  He stated
that while he was at Wade, <u>not</u> at the Terrebonne Parish jail, he was trying to get some
medical attention for his eye and was told that there was no eye doctor on the Wade
prison campus.  He acknowledged, however, that the instant case has been filed only
against Terrebonne Parish officials and that he was provided with proper care while
incarcerated in Terrebonne Parish.  He alleged that he now has no sight in his right eye,
but that he was receiving medical care for his eye where he is currently incarcerated in
the Allen Correctional Center.

McKay testified that he had received a copy of the medical records that were
received in response to my order, Record Doc. Nos. 5 and 21, that he had reviewed them

5

and that they are accurate.  He confirmed the indication in the medical records that, while in the Terrebonne Parish jail, he had been transported by Terrebonne Parish sheriff's office personnel to the Leonard Chabert Medical Center eye clinic for medical care and that he had received other medical care for his eye injuries as reflected in those records.

## ANALYSIS

### I.   STANDARDS OF REVIEW

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'"  Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended).  A complaint is frivolous "if it lacks an arguable basis in law or fact."  Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'"  Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims.  Spears, 766 F.2d at 180.  "[T]he Spears procedure affords the

6

plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis, 157 F.3d at 1005.  The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e).  Haddix v. Kerss, No. 04-41636, 2006 WL 2861110, at *2 (5th Cir. Oct. 9, 2006); Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990).  "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists."  Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable.  "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents.  A defendant may not use medical records to refute a plaintiff's testimony at a Spears hearing."  Id. (citing Wilson, 926 F.2d at 482-83; Williams v. Luna, 909 F.2d 121, 124 (5th Cir. 1990)).  However, "'[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate

indifference.'"  <u>Gobert v. Caldwell</u>, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting

<u>Banuelos v. McFarland</u>, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

After a <u>Spears</u> hearing, the complaint may be dismissed as legally frivolous if it

lacks an arguable basis in law, <u>Jackson v. Vannoy</u>, 49 F.3d 175, 176-77 (5th Cir. 1995);

<u>Moore v. Mabus</u>, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the

facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the

irrational or wholly incredible."  <u>Id.</u> at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably

meritless legal theory, such as if the complaint alleges the violation of a legal interest

which clearly does not exist.'"  <u>Davis</u>, 157 F.3d at 1005 (quoting <u>McCormick v. Stalder</u>,

105 F.3d 1059, 1061 (5th Cir. 1997)).  "When a complaint raises an arguable question

of law which the district court ultimately finds is correctly resolved against the plaintiff,

dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section

1915(d) standard is not."  <u>Moore</u>, 976 F.2d at 269.  A prisoner's in forma pauperis

complaint which fails to state a claim may be dismissed sua sponte at any time under 28

U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint may be dismissed under 28 U.S.C. § 1915(e) and

42 U.S.C. § 1997e(c)(1), either as frivolous because it lacks an arguable basis in law or

under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims.

Plaintiff's complaint, as amended by his testimony at the <u>Spears</u> hearing, fails to state a claim under the broadest reading.[1]

## II.   PRISONER CLASSIFICATION

McKay alleges that, as a pretrial detainee, he was improperly housed with convicted inmates and that another inmate attacked him as a result.  In <u>Jones v. Diamond</u>, 636 F.2d 1364 (5th Cir. 1981),[2] the Fifth Circuit stated that

> [t]he confinement of pretrial detainees <u>indiscriminately</u> with convicted persons is unconstitutional <u>unless</u> such a practice is 'reasonably related to <u>the institution's interest in maintaining jail security,' or physical facilities do not permit their separation.  Of course, if a particular pretrial detainee has a long record of prior convictions or is likely to be violent, imposition of greater security measures is warranted</u> . . . .  Nonetheless, pretrial detainees have a due process right to be considered individually to <u>the extent security and space requirements permit.</u>"

<u>Id.</u> at 1374 (quoting <u>Bell v. Wolfish</u>, 441 U.S. 520, 531 (1979)) (additional citations omitted) (emphasis added).  Thus, the Fifth Circuit in <u>Jones</u> recognized that the housing of pretrial detainees with convicted inmates may raise constitutional concerns, but only if their classification together is handled indiscriminately without justification, <u>Pembroke</u>

---

[1]Pro se civil rights complaints must be broadly construed, <u>Moore</u>, 30 F.3d at 620, and I have broadly construed the complaint in this case.

[2]<u>Overruled on other grounds by</u> <u>International Woodworkers v. Champion Int'l Corp.</u>, 790 F.2d 1174 (5th Cir. 1986), <u>aff'd sub. nom. Crawford Fitting Co. v. J.T. Gibbons, Inc.</u>, 482 U.S. 437 (1987).

v. Wood County, 981 F.2d 225, 228 (5th Cir. 1993), but it also recognized that some circumstances will permit the housing of pretrial detainees with convicted inmates.

Significantly, the classification of inmates is an administrative function of the prison. Jones, 636 F.2d at 1376. Courts accord great deference to prison officials' administrative decisions and will not interfere with legitimate administration without a constitutional violation. Bell, 441 U.S. at 547-48; Smith v. Bingham, 914 F.2d 740, 742 (5th Cir. 1990). "Inmates have a federal right to due process at prison classification . . . only if state law contains 'substantive predicates' limiting the prison administrators' discretion to classify, assign, and punish inmates." Ricker v. Leapley, 25 F.3d 1406, 1409 (8th Cir. 1994); accord Woods v. Edwards, 51 F.3d 577, 582 (5th Cir. 1995) (citing Hewitt v. Helms, 459 U.S. 460, 469-70 (1983)); Canterino v. Wilson, 869 F.2d 948, 953 (6th Cir. 1989) (citing Hewitt, 459 U.S. at 472). "Classification of inmates in Louisiana is a duty of the [jailer] and an inmate has no right to a particular classification under state law." Woods, 51 F.3d at 581-82 (quotation omitted).

Thus, "[i]nmates have no protectable property or liberty interest in custodial classification. The classification of prisoners is a matter within the discretion of prison officials. Absent an abuse of discretion, federal courts are loathe to interfere with custodial classifications established by prison officials." Whitley v. Hunt, 158 F.3d 882, 889 (5th Cir. 1998) (citations omitted), abrogated on other grounds by Booth v. Churner,

532 U.S. 732, 735 (2001); accord Jones v. Roach, No. 05-60530, 2006 WL 2474746, at *1 (5th Cir. Aug. 28, 2006); Wilkerson v. Stalder, 329 F.3d 431, 436 (5th Cir. 2003).

The Fifth Circuit's decision in Jones v. Diamond specifically states that limitations on physical facilities might justify housing pretrial detainees with convicted inmates, that pretrial detainees have a right to be considered individually only to the extent that security and space requirements permit and that imposition of greater security measures is warranted if an inmate has a long record of prior convictions or is likely to be violent. Jones, 636 F.2d. at 1374.  Under the precise circumstances of this case, it cannot be concluded that housing McKay with convicted inmates was unconstitutional.

McKay testified that he was moved to the dorm where DOC inmates were held because he had been involved in a fight with another inmate in the pretrial detainee dorm. He further testified that he had an extensive record of three prior felony convictions, including convictions for possession of cocaine and carnal knowledge of a juvenile, for which he had previously served time in prison. Significantly, he also conceded that he was on parole at the time of the 2005 arrest that led to the subject incarceration in the Terrebonne Parish jail.  He said that he was probably moved to the DOC dorm as punishment for his fighting in the pretrial detainees' dorm.  Plaintiff's subjective belief that he could have been moved to the lockdown dorm instead of the convicted inmates' dorm is unsupported and insufficient for the court to conclude that prison officials'

11

discretionary decisions concerning security and space requirements were unconstitutional. McKay's own testimony establishes that Jackson posed no known or anticipated threat to McKay before their sudden and unanticipated fight. This circumstance, coupled with McKay's prior criminal history and his involvement in a fight in the jail, supports the objective reasonableness of this particular housing decision.

In this instance, housing McKay together with convicted inmates cannot be characterized as arbitrary or indiscriminate. It was a reasonable administrative decision and was not an abuse of the discretion the law assigns to prison officials, with which this court should not interfere. No violation of McKay's constitutional rights occurred under these circumstances.

## III.   FAILURE TO PROTECT

Construed broadly, McKay's allegation that he was attacked by another inmate as a result of his allegedly improper placement or classification within the jail may also include a claim that prison officials unconstitutionally failed to protect him from harm or attack. McKay was a pretrial detainee at the time of the incident on which he bases this claim. In Hare v. City of Corinth, 74 F.3d 633, 650 (5th Cir. 1996), the Fifth Circuit stated:

> (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection

12

from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

Thus, regardless whether the inmate is a pretrial detainee or a convicted prisoner, the standard of liability is the same for episodic acts or omissions of jail officials that expose an inmate to being harmed by another inmate.   Hamilton v. Lyons, 74 F.3d 99, 104 n.3 (5th Cir. 1996); Hare, 74 F.3d at 650.

Prison officials have a duty to protect inmates from harm or violence by other inmates.   Farmer v. Brennan, 511 U.S. 825, 833 (1994); Hare, 74 F.3d at 650.   "To establish a failure-to-protect claim, an inmate must show that he was 'incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection.'"   Pogue v. Bello, 275 F.3d 1079, 2001 WL 1467095, at *1 (5th Cir. Oct. 25, 2001) (quoting Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995)).   Here, while plaintiff may allege that he was exposed to harm by prison officials' acts or omissions, he fails to state a claim cognizable under Section 1983.

A convicted prisoner or pretrial detainee may succeed on a claim for damages under 42 U.S.C. § 1983 for failure to protect from harm only if he demonstrates that there has been "deliberate indifference" by prison officials or other state actors.   Only deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts

13

repugnant to the conscience of mankind," constitutes conduct proscribed by the Constitution.  Estelle v. Gamble, 429 U.S. 97, 105-06 (1976); accord Gregg v. Georgia, 428 U.S. 153, 182-83 (1976); Hare, 74 F.3d at 650.  "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it."  Farmer, 511 U.S. at 847.

An inmate must satisfy two requirements to demonstrate that a prison official has violated the Constitution by failing to protect him from attack by another inmate.  "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities."  Id. at 834 (quotation omitted).  Thus, plaintiff must show that a risk of serious harm existed from another inmate to satisfy this prong.  Wilson v. Seiter, 501 U.S. 294, 297 (1991); Rhem v. Marion County Sheriff Dep't, 263 F.3d 164, 2001 WL 803853, at *1 (5th Cir. June 14, 2001).

Further, the plaintiff must establish that the defendant possessed a culpable state of mind.  Farmer, 511 U.S. at 838 (citing Wilson, 501 U.S. at 298).  A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the

inference." Id. at 834, 837;  accord Newton v. Black, 133 F.3d 301, 308 (5th Cir. 1998).

"Mere negligence or a failure to act reasonably is not enough.  The officer must have the

subjective intent to cause harm."  Mace v. City of Palestine, 333 F.3d 621, 626 (5th Cir.

2003).  If the court finds that one of the components of the test is not met, it need not

address the other component.  Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998).

> The Supreme Court has recently reaffirmed that "deliberate indifference"
> is a stringent standard of fault, requiring proof that a municipal actor
> disregarded a known or obvious consequence of his action.  Board of the
> County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S.
> 397, 117 S.Ct. 1382, 1391 (1997) . . . .  The "deliberate indifference"
> standard permits courts to separate omissions that "amount to an intentional
> choice" from those that are merely "unintentionally negligent oversight[s]."

Southard v. Texas Bd. of Crim. Justice, 114 F.3d 539, 551 (5th Cir. 1997) (citations

omitted) (emphasis added). "'Subjective recklessness,' as used in the criminal law, is the

appropriate test for deliberate indifference."  Norton, 122 F.3d at 291 (citing Farmer, 511

U.S. at 838-40).

In the instant case, plaintiff's pleadings as expanded by his testimony establish that

nothing more than episodic acts or omissions as defined in Hare are at issue in this case.

Thus, the "deliberate indifference" standard applies and plaintiff must allege facts

sufficient to establish that defendants knew he faced a substantial risk of serious harm

and disregarded that risk by failing to take reasonable measures to abate it.  In this case,

McKay fails completely to allege facts sufficient to establish deliberate indifference.

It cannot be concluded that prison officials unconstitutionally exposed plaintiff to a substantial risk of serious harm.  Plaintiff's own testimony confirms that neither prison officials nor McKay himself had any reason to believe or even suspect that the other inmate, Jackson, posed any danger to McKay, as there was no history of prior incidents between him and Jackson.  Plaintiff testified that the incident occurred suddenly and without warning when Jackson hit him in the eye while McKay was playing cards.

Under these circumstances, it cannot be concluded that any act or omission of prison officials knowingly exposed McKay to a substantial risk of serious harm.  Any conceivable claim that prison officials violated plaintiff's constitutional rights by failing to protect him from harm must be dismissed.

IV.   <u>MEDICAL CARE</u>

Although McKay's complaint did not appear to allege that the medical care he received <u>at</u> <u>the</u> <u>Terrebonne</u> <u>Parish</u> <u>jail</u> following the attack by Jackson was constitutionally inadequate, the court asked him at the <u>Spears</u> hearing whether he intended to bring such a claim.  In his testimony, plaintiff acknowledged that he was not making any such claim and that he was provided with proper care while incarcerated in Terrebonne Parish.

Accordingly, any claim for inadequate medical care against the only named defendants, officials of the Terrebonne Parish sheriff's office, that might be gleaned

16

through a broad reading of plaintiff's pro se complaint must be dismissed for failure to state a claim.[3]

V.    PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

As mentioned in the introduction to this report, McKay has filed a motion asking that he be given an eye examination, which may be construed to seek either injunctive relief or an examination pursuant to Fed. R. Civ. P. 35.  Record Doc. No. 9.

According to Rule 65(b) of the Federal Rules of Civil Procedure, a party seeking a temporary restraining order and/or preliminary injunction must set forth "specific facts shown by affidavit or verified complaint" that show that the moving party will suffer irreparable injury before a hearing on the matter may be held.  A temporary restraining order and preliminary injunction are extraordinary equitable remedies that may be granted only if plaintiff establishes four essential elements:  (1) a substantial likelihood of success on the merits, (2) a substantial threat that he will suffer irreparable injury if the injunction is denied, (3) that the threatened injury outweighs any damage that the injunction might cause defendants and (4) that the injunction will not disserve the public interest.  Sugar Busters LLC v. Brennan, 177 F.3d 258, 264 (5th Cir. 1999).  The requisite showing is "a substantial threat of irreparable injury if the injunction is not

_____

[3]Plaintiff's testimony indicated that he was dissatisfied with the medical care he received during his short stay in the Wade facility, which is located in Caddo Parish within the jurisdictional authority of the United States District Court for the Western District of Louisiana, where any such claim may be brought.

issued."  DSC Commc'n Corp. v. OGI Techs., Inc., 81 F.3d 597, 600 (5th Cir. 1996)

(emphasis added).

Applying the foregoing legal standards to the facts he alleges, McKay's written

submissions and the record to date establish that he is not entitled to a temporary

restraining order or preliminary injunction.  Although plaintiff's motion alleges that he

needs emergency medical treatment or he may lose his sight in his right eye, these wholly

unsubstantiated allegations are the rankest form of speculation, and plaintiff has not

established that any injury he may suffer in the future would be irreparable.  McKay

conceded in his testimony that he is now receiving treatment for his eye at the Allen

Correctional Center where he is currently incarcerated.  Thus, there appears to be no need

for a preliminary injunction or temporary restraining order.

It also cannot be concluded that McKay's complaint presents "a substantial

likelihood of success on the merits."  Id.  On the contrary, his complaint fails to state a

claim on which relief could be granted.  Although McKay's allegations must be accepted

as true for the initial screening process required for such cases, 28 U.S.C. § 1915A;

Martin v. Scott, 156 F.3d 578 (5th Cir. 1998), and I have done so in previous sections of

this report and recommendation, no such requirement applies to his request for injunctive

relief.  Plaintiff has not clearly alleged at this early stage of the proceedings that a

violation of his clearly established constitutional rights by the defendants in this lawsuit

has occurred.  Moreover, injunctive relief that would interfere with the administration of prison functions by the court, without justification, would disserve the public interest.

Finally, jail officials at Wade, where McKay was incarcerated when he filed his motion, and at the Allen Correctional Center, where he is currently incarcerated, are not before this court as defendants in this action.  The public interest would not be served by allowing plaintiff to amend his complaint to add new, unrelated defendants and a new cause of action to the instant lawsuit, when it has been recommended that this lawsuit should be dismissed.

To whatever extent, if any, that plaintiff's motion may be construed as a request for a medical examination under Fed. R. Civ. P. 35, it must also be denied.  For all of the reasons set forth above, I find that "good cause" for a Rule 35 examination, as specifically required in Fed. R. Civ. P. 35(a) cannot be established on this record.

For all of these reasons, plaintiff's motion for injunctive relief should be denied.

## <u>RECOMMENDATION</u>

For all of the foregoing reasons, **IT IS RECOMMENDED** that plaintiff's motion for temporary restraining order and/or preliminary injunction and/or a Rule 35 medical examination, Record Doc. No. 9, be **DENIED**.

**IT IS FURTHER RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this ___29th___ day of November, 2006.


JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE